IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANTURE P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:22-cv-02835-X-BT |
| | § | |
| KILOLO KIJAKAZI, ACTING | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiff Anture P.'s[1] civil action seeking judicial review

pursuant to 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of

Social Security (ECF No. 1). The District Court referred the case to the United

States Magistrate Judge for pretrial management under 28 U.S.C. § 636(b) and a

standing order of reference. For the reasons explained below, the Magistrate Judge

recommends that the District Court REVERSE the Commissioner's decision and

REMAND the case to the Commissioner.

**Background**

Plaintiff alleges that she is disabled due to panic and anxiety disorder; major

depressive disorder; post-traumatic stress disorder (PTSD); night terrors; and

---

[1] The Court uses only Plaintiff's first name and last initial as instructed by the
May 1, 2018, Memorandum Re: Privacy Concern Regarding Social Security and
Immigration Opinions issued by the Committee on Court Administration and Case
Management of the Judicial Conference of the United States.

insomnia. Admin. R. 63-64, 73 (ECF No. 11-1).[2] Plaintiff was born in 1973, and she claims that she has been disabled since May 1, 2012. Admin. R. 28, 63-64. Plaintiff is a high school graduate. Admin. R. 28, 250. She has no past relevant work experience. Admin. R. 28.

Plaintiff applied for supplemental security income (SSI) benefits on March 6, 2020. Admin. R. 65, 73. Her claim was denied initially and upon reconsideration. Admin. R. 71, 82. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge (ALJ), who conducted a telephonic administrative hearing on May 11, 2022.[3] Admin. R. 37-62.

The ALJ found Plaintiff was not disabled and thus not entitled to SSI benefits. Admin. R. 30. Utilizing the five-step sequential evaluation,[4] the ALJ first

---

[2] Citations to the record refer to the CM/ECF page numbers at the top of each page rather than page numbers at the bottom of each filing.

[3] Because of the extraordinary circumstances presented by the COVID-19 pandemic, the ALJ was unable to conduct the hearing by video.

[4] "In evaluating a disability claim, the [ALJ] conducts a five-step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The plaintiff bears the initial burden of establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ to show that there is other substantial work in the national economy that the plaintiff can perform. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

found that Plaintiff had not engaged in substantial gainful activity since her application date. Admin. R. 21. At the second step, the ALJ noted that Plaintiff experienced severe impairments of "major depressive disorder, anxiety disorder, post-traumatic stress disorder (PTSD), personality disorder, and sedative use disorder." Admin. R. 21.[5] At the third step, the ALJ determined that Plaintiff's severe mental impairments did not meet or medically equal any listed impairment in appendix 1 of the social security regulations. Admin. R. 22.

Next, the ALJ conducted a residual functional capacity (RFC) assessment. He found that Plaintiff has the RFC:

> to perform a full range of work at all exertional levels but with the following non[-]exertional limitations: she can understand, remember and carry out simple instructions and use appropriate judgement to make simple work related decisions, and is able to maintain attention and concentration to perform simple repetitive tasks, with occasional interaction with co-workers and supervisors and no interaction with the public, in an environment with few workplace changes.

Admin. R. 24

Finally, relying on the testimony of a vocational expert, the ALJ determined that Plaintiff had the ability to perform the jobs of floor waxer, dishwasher, and assembler, and that such jobs existed in significant numbers in the national

---

[5] While the ALJ considered Plaintiff's physical impairments relating to hypertension, high cholesterol, and carpal tunnel syndrome, in her Appellant brief before this Court, Plaintiff only addresses her alleged disability related to her mental impairments. The Court, therefore, limits its discussion to Plaintiff's allegations of disability related to mental impairments.

economy. Admin. R. 29. Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act and not entitled to SSI benefits. Admin. R. 30.

Plaintiff appealed the ALJ's decision to the Appeals Council. Admin. R. 5. The Appeals Council found that the appeal did not provide a basis for modifying the ALJ's decision. Admin. R. 5-8. Plaintiff then filed this action in federal district court.

## Legal Standard

The Court's "review of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the [ALJ] applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Copeland*, 771 F.3d at 923 ("Substantial evidence is more than a mere scintilla and less than a preponderance.").

The ALJ, and not the courts, resolves conflicts in the evidence; the Court may not "reweigh the evidence or try the issues de novo." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam). Hence, the Court may not substitute its own judgment for the ALJ's, and it may affirm only on the grounds that the Commissioner stated to support her decision. *Copeland*, 771 F.3d at 923. If the Commissioner's findings are supported by substantial evidence, the findings are

conclusive, and the Commissioner's decision must be affirmed. *Martinez,* 64 F.3d at 173. A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995).

Nevertheless, the substantial evidence review is not an uncritical "rubber stamp" and requires "more than a search for evidence supporting the [ALJ's] findings." *Hill v. Saul,* 2020 WL 6370168, at *6 (N.D. Tex. Sept. 29, 2020) (quoting *Martin v. Heckler,* 748 F.2d 1027, 1031 (5th Cir. 1984)), *adopted by* 2020 WL 6363878 (N.D. Tex. Oct. 29, 2020) (Lindsay, J.). The Court "must scrutinize the record and take into account whatever fairly detracts from the substantiality of the evidence supporting" the ALJ's decision. *Id.* (quoting *Martin,* 748 F.2d at 1031). A no-substantial-evidence finding is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Id.* (citation omitted).

## Analysis

The central issue presented is whether the ALJ's RFC determination was supported by substantial evidence. Of note, in the approximately five hundred pages of medical records in the administrative record, there is no treating, examining, or consultative resource who considered the effect of Plaintiff's severe mental impairments on her ability to work.

Plaintiff contends that, because the administrative record before the ALJ contained no medical opinions assessing the effects of Plaintiff's mental

impairments on her ability to work, "[t]here was no medical basis for the ALJ's finding of fact concerning the Plaintiff's ability to function from a mental standpoint." Pl.'s Br. 9 (ECF No. 12). Plaintiff argues that this "was an error of law and rendered [the ALJ's] decision not supported by substantial evidence." *Id.* at 13. In response, the Commissioner argues that the "record contained sufficient evidence for the ALJ to assess Plaintiff's impairments, and substantial evidence supports the ALJ's mental RFC determination." Def.'s Br. 3 (ECF No. 16).

**1. The RFC determination is not supported by substantial evidence.**

"Determining a [plaintiff's RFC] is the ALJ's responsibility, and [the ALJ] has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence." *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007) (per curiam). Under the current regulations, ALJs do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a); *accord Winston v. Berryhill*, 755 F. Appx 395, 402 n.4 (5th Cir. 2018) (citation omitted). A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Leggett*, 67 F.3d at 564.

An ALJ's RFC analysis determines the most that a person can still do despite recognized limitations. 20 C.F.R. § 404.1545(a)(1). The RFC determination is a "combined medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to

6

work." *Hill*, 2020 WL 6370168, at *6 (cleaned up) (quoting *Hollis v. Bowen*, 837 F. 2d 1378, 1386-87 (5th Cir. 1988) (per curiam)). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). An individual's RFC should be based on all of the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources. 20 C.F.R. at § 404.1545(a)(3) (2012); SSR 96-8p, 1996 WL 374184, at *1.

"There is no requirement that an ALJ's RFC finding must mirror or match a medical opinion." *Nic R. v. Kijakazi*, 2023 WL 2529930, at *3 (N.D. Tex. Feb. 21, 2023) (citation omitted) (Rutherford, J.), *adopted by* 2023 WL 2531492 (N.D. Tex. Mar. 15, 2023). "Even the absence of medical opinions does not necessarily render a record inadequate to support an ALJ's RFC determination." *Id.* at *5 (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) and *Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003) (per curiam)). But "as a non-medical professional, the ALJ is not permitted to 'draw his own medical conclusions from some of the data, without relying on a medical expert's help.'" *Kenneth S. v. Saul*, 2019 WL 3881618, at *5 (N.D. Tex. July 31, 2019) (Horan, J.) (quoting *Frank v. Barnhart*, 326 F.3d 618, 621-22 (5th Cir. 2003)), *adopted by* 2019 WL 3859653 (N.D. Tex. Aug. 15, 2019). ALJs must resist the urge to "play[ ] doctor" and make independent assessments of raw medical data. *Id.* at *7 (citation omitted). This is because "[c]ommon sense can mislead" and "lay intuitions about medical

phenomena are often wrong." *Frank*, 326 F.3d at 622 (citation omitted). "[T]he principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability." *Salmond v. Berryhill*, 892 F.3d 812, 818 (5th Cir. 2018) (citation omitted).

In *Ripley*, the Fifth Circuit observed that the record included "a vast amount of medical evidence establishing that [the claimant] ha[d] a problem with his back," but it did "not clearly establish" what effect that "condition had on his ability to work." 67 F.3d at 557. In addition to lacking "reports from qualified medical experts" regarding the claimant's ability to work, "[t]he only evidence regarding [the claimant's] ability to work came from [his] own testimony." *Id.* at 557. Thus, substantial evidence did not support the ALJ's RFC determination because the court could not "determine the effects of [the claimant's] conditions, no matter how 'small,' on his ability to . . . work." *Id.* at 557 & n.27. Later discussing *Ripley*, the Fifth Circuit reaffirmed that "an ALJ may not—without opinions from medical experts—derive the applicant's [RFC] based solely on the evidence of his or her claimed medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (per curiam) (citation omitted). In *Williams*, the court held that "the ALJ impermissibly relied on his own medical opinions as to the limitations presented by" the claimant's conditions because there was "no evidence supporting the ALJ's finding that" she "could perform light work with [those] conditions." *Id.* at 831-32.

Instead, the ALJ should request a "medical source statement" describing types of work the claimant is still capable of performing despite her condition. *Ripley*, 67 F.3d at 557. Absent such a statement, there is typically insufficient evidence to support an RFC determination. *Id.* at 557-58 (remanding the case with instructions to obtain a report from a treating physician regarding effects of the plaintiff's condition on his ability to work).

Here, prior to analyzing Plaintiff's mental functional limitations using the "paragraph B" criteria,[6] the ALJ noted that the "claimant did not complete the Function Report (form SSA 3367) which is traditionally used to evaluate functioning under the 'paragraph B' criteria." Admin. R. 22. He observed that "the state agency medical consultants noted her failure to submit such documents in the assessments completed in October of 2020 and March of 2021." Admin. R. 22 (citing Exs. 1A, p. 6; 3A, p. 5). Nevertheless, the ALJ went on to find that Plaintiff had moderate mental limitations in the following areas: (1) understanding, remembering, or applying information; (2) concentrating, persisting, or maintaining pace; (3) interacting with others; and (4) adapting or managing herself. Admin. R. 22-23.

---

[6] "Paragraph B contains four broad functional areas: activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation," which the ALJ utilizes to rate the degree of functional limitation resulting from a mental impairment. *Gonzales v. Colvin*, 2016 WL 107843, at *5 (N.D. Tex. Jan. 11, 2016) (Fitzwater, J.) (citing 20 C.F.R. § 404.1520a(b)(2), (c)(4); 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.00C).

As to understanding, remembering, and applying information, the ALJ considered Plaintiff's hearing testimony where "she described some problems with her short-term memory." Admin. R. 22. He concluded, however, that, "for the most part, [she] did not report limitations in her ability to understand or apply information." Admin. R. 22. He noted that she "did endorse persistent insomnia," which he found "could conceivably affect her ability to understand, remember and apply information, but these limitations would be moderate at most." Admin. R. 22. The ALJ also considered mental health records describing Plaintiff as "alert and fully oriented, her thought process logical, her thought association organized and goal-directed, her memory intact, her fund of knowledge average, and her thought content normal." Admin. R. 22-23 (citing Ex. 3F, pp. 3-4).

With regard to concentrating, persisting or maintaining pace, the ALJ considered Plaintiff's hearing testimony, where she "reported problems with concentration and stated she was unable to complete tasks such as household chores." Admin. R. 23. He found that, "[w]ith her combination of panic attacks, depressive symptoms, and insomnia," her testimony was "not unreasonable." Admin. R. 23. He noted that mental health records reflected Plaintiff's "concentration and attention were fair." Admin. R. 23 (citing Ex. 3F, p. 4). "[I]n view of this evidence," the ALJ found "moderate limitation in this broad area of functioning." Admin. R. 23.

And based on her "calm, engaging, and cooperative" interactions with providers, the ALJ determined Plaintiff's mental impairments supported only

10

moderate limitations in interacting with others. Admin. R. 23 (citing Ex. 3F, p. 3). The ALJ also noted Plaintiff's hearing testimony that she socially isolated and had difficulty interacting with others because of her PTSD, but he observed that Plaintiff testified "that before her father passed away in 2021, she lived with him and assisted with his care." Admin. R. 23.

Finally, as for adapting and managing herself, the ALJ noted that Plaintiff's treatment records documented "poor coping skills, but findings on mental status exam were essentially normal and [her] insight and judgment fair." Admin. R. 23 (citing Ex. 3F, p.3). He also noted that Plaintiff had "not been hospitalized for psychiatric reasons during the period relevant to this decision [and that her] psychiatric symptoms are generally controlled when she is compliant with treatment." Admin. R. 23. He observed that treatment records reflected that Plaintiff had "developed dependence on benzodiazepine medication during her course of treatment which . . . would affect her ability to adapt or manage herself, but this limitation would not exceed more than moderate severity." Admin. R. 23.

The ALJ then rejected findings from the state agency consultants. Admin. R. 28. The first consultant considered Plaintiff's mental impairments severe but determined there was "insufficient evidence" to impose functional mental limitations. Admin. R. 67. The second consultant agreed. Admin. R. 77. As a result, neither consultant completed an RFC assessment. Admin. R. 69, 79. The ALJ found both opinions unpersuasive and, based on the hearing testimony and medical records, found Plaintiff "limited to simple, unskilled work with limited

interpersonal interaction[.]" Admin. R. 28. In assessing Plaintiff's RFC, the ALJ cited to no other medical opinions regarding the effects of Plaintiff's severe mental impairments on her ability to work.

The ALJ also ignored Plaintiff's request to send her for a consultative examination to obtain a medical source statement on her ability to function. *See* Admin. R. 61. At the conclusion of the administrative hearing, Plaintiff's counsel highlighted for the ALJ that the state agency medical examiners had declined to offer any RFCs based on "insufficient evidence." Admin. R. 61. Her attorney explained that her claim was processed "during the beginning of the COVID pandemic," when doctors' offices and clinics were closed. Admin. R. 61. The ALJ responded that he'd "made a note of that" and would "certainly take that under consideration." Admin. R. 61. However, in his opinion, the ALJ blamed the deficiency in the record solely on Plaintiff's failure to complete documents. Admin. R. 22.

While the RFC is ultimately the ALJ's determination, under these circumstances, there is no foundational basis for the ALJ's RFC. An ALJ cannot look to only the claimant's "history of surgery, medical examinations, and complaints of pain," and conclude the claimant can perform sedentary work. *Ripley*, 67 F.3d at 557. In doing so, "the ALJ relied on evidence that merely describes Plaintiff's conditions, rather than demonstrating her ability to work despite those impairments." *Amy Y. v. Comm'r of Soc. Sec.*, 2023 WL 5209813, at *7 (N.D. Tex. July 25, 2023) (finding error where, in the absence of medical

12

opinions and RFC assessments by state agency consultants, the ALJ made an RFC determination based on medical conclusions he drew from the raw data), *adopted by* 2023 WL 5216497 (N.D. Tex. Aug. 14, 2023); *see also Cary G. T. v. Comm'r, Soc. Sec. Admin.*, 2022 WL 954341, at *3 (N.D. Tex. Mar. 29, 2022) (Toliver, J.) (concluding that although "the RFC is ultimately the ALJ's determination," the ALJ erred because there was no apparent "foundational basis for that decision" where "no treating, examining, or consultative resource reviewed the impact of [p]laintiff's conditions on his ability to work"); *Jim S. v. Saul*, 2019 WL 4694943, at *9 (N.D. Tex. Sept. 25, 2019) (Ramirez, J.) (finding error where, despite the voluminous progress reports, clinical notes, and lab reports in evidence, "none [made] any explicit or implied reference to the effects these conditions h[ad] on claimant's ability to work" and the ALJ could not rely on that "raw medical evidence as substantial support for" the claimant's RFC).

Here, as in the cases cited directly above, there are no medical opinions in the record regarding the effects Plaintiff's mental impairments had on her ability to work, particularly in the areas of understanding, remembering, carrying out instructions, persisting and maintaining pace, and adapting and managing one's self. Indeed, the state agency consultants highlighted this fact when they determined there was "insufficient evidence" to impose functional mental limitations. Admin. R. 67, 77. And as in those cases cited above, here, the Court can only conclude that the ALJ relied on his own interpretation of the medical and other evidence, which he may not do. *See Williams*, 355 F. App'x at 832 n.6. ("An

ALJ may not–without the opinions from medical experts–derive the applicant's [RFC] based solely on the evidence of his or her claimed medical conditions, [and] an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions.").

### 2. The ALJ's error was not harmless.

Because "[p]rocedural perfection in administrative proceedings is not required" and a court "will not vacate a judgment unless the substantial rights of a party have been affected," Plaintiff must show she was prejudiced by the ALJ's failure to rely on medical opinion evidence in assessing her RFC. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam). To establish prejudice, she must show that the ALJ's failure to rely on a medical opinion as to the effects that her mental impairments had on her ability to work casts doubt on the existence of substantial evidence supporting her disability determination. *See McNair v. Comm'r of Soc. Sec. Admin.*, 537 F. Supp. 2d 823, 837 (N.D. Tex. 2008) ("Procedural errors in the disability determination process are considered prejudicial when they cast doubt onto the existence of substantial evidence in support of the ALJ's decision.") (citing *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)).

"Courts in the Northern District have found that the ALJ's failure to rely on a medical opinion concerning the claimant's RFC necessarily casts doubt on the disability determination." *Amy Y.,* 2023 WL 5209813, at *7 (collecting cases); *see also Cary G. T.,* 2022 WL 954341, at *4 (finding prejudice and remanding where

14

the administrative record revealed no treating, examining, or consultative resource that reviewed the impact of Plaintiff's conditions on his ability to work, and ALJ assessed RFC based on his own lay interpretation of medical records and claimant's testimony); *Jim S.*, 2019 WL 4694943, at \*10 (finding prejudice and remanding where there were no medical opinions in the record regarding the effects Plaintiff's mental impairments had on his ability to work, and the ALJ appeared to have relied on his own interpretation of the medical and other evidence); *Tyria R. v. Saul*, 2020 WL 10050779, at \*13 (N.D. Tex. March 6, 2020) (Ramirez, J.) (finding prejudice and reversing and remanding for further proceedings for lack of substantial evidence because of the ALJ's failure to rely on a medical opinion in determining the plaintiff's RFC), *adopted by* 2020 WL 1434516 (Mar. 20, 2020); *Thornhill v. Colvin*, 2015 WL 232844, at \*11 (N.D. Tex. Dec. 15, 2014) (finding prejudice and remanding "where the ALJ could have obtained evidence that might have changed the result—specifically, a medical source statement").

As in these cases, the Court concludes that the ALJ's error was not harmless and remand is required on this issue.

### Recommendation

For the reasons stated, the Court should REVERSE the Commissioner's decision and REMAND for further proceedings.

**SO RECOMMENDED.**

September 6, 2023.

_____

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Svcs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

16